1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   THOMAS QUINN,

11          Plaintiff,                    No. 2:10-cv-2170 DAD

12      vs.

13   MICHAEL J. ASTRUE,                   <u>ORDER</u>
     Commissioner of Social Security,
14
            Defendant.
15   _____/

16          This social security action was submitted to the court without oral argument for

17   ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

18   judgment.  For the reasons explained below, plaintiff's motion is denied, defendant's motion is

19   granted, and the decision of the Commissioner of Social Security (Commissioner) is affirmed.

20                        **PROCEDURAL BACKGROUND**

21          On June 23, 2005, plaintiff filed an application for Supplemental Security Income

22   (SSI) under Title XVI of the Social Security Act (the Act), alleging disability beginning on

23   August 16, 1997.  (Transcript (Tr.) at 120-26.)  Plaintiff's application was denied initially on

24   November 4, 2005, and upon reconsideration on August 15, 2007.  (<u>Id</u>. at 98, 110.)

25          Plaintiff requested a hearing before an Administrative Law Judge (ALJ), and an

26   administrative hearing was held before an ALJ on February 5, 2008.  (<u>Id</u>. at 463-504.)  In a

decision issued June 16, 2008, the ALJ found that plaintiff was not disabled.  (Id. at 53-60.)

Plaintiff requested review of the ALJ's decision and on October 16, 2008, the Appeals Council vacated the ALJ's June 16, 2008 decision and remanded the case.  (Id. at 46-49.)  On April 7, 2009, another hearing was held before an ALJ.  (Id. at 505-46.)  Plaintiff was represented by counsel and testified at the administrative hearing.  In a decision issued on June 15, 2009, the ALJ found that plaintiff was not disabled.  (Id. at 14-33.)  The ALJ entered the following findings:

> 1.  The claimant has not engaged in substantial gainful activity since June 23, 2005, the date the application was protectively filed (20 CFR 404.1520(b) and 404.1571 et seq.).
>
> 2.  The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease with osteoarthritis in the bilateral knees, bilateral carpal tunnel syndrome, major depression and morbid obesity (20 CFR 404.1520(c)).
>
> 3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b).
>
> 5.  The claimant has no past relevant work history (20 CFR 416.965).
>
> 6.  The claimant was born on October 25, 1962, and was 42 years old, which is defined as a younger individual age 18-49, on the date the application was filed. (20 CFR 416.963).
>
> 7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).
>
> 8.  The claimant has no past relevant work history (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

1               10.  The claimant has not been under a disability, as defined in the
Social Security Act, since June 23, 2005, the date the application

2               was filed (20 CFR 416.920(g)).

3  (Id. at 18-33.)

4          On June 18, 2010, the Appeals Council denied plaintiff's request for review of the

5  ALJ's June 15, 2009 decision.  (Id. at 3-5.)  Plaintiff sought judicial review pursuant to 42 U.S.C.

6  § 405(g) by filing the complaint in this action on August 13, 2010.

7                            **LEGAL STANDARD**

8          The Commissioner's decision that a claimant is not disabled will be upheld if the

9  findings of fact are supported by substantial evidence in the record as a whole and the proper

10  legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973

11  (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

12  The findings of the Commissioner as to any fact, if supported by substantial evidence, are

13  conclusive.  Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such

14  relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

15  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones

16  v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401

17  (1971)).

18          A reviewing court must consider the record as a whole, weighing both the

19  evidence that supports and the evidence that detracts from the ALJ's conclusion.  Jones, 760 F.2d

20  at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

21  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

22  substantial evidence supports the administrative findings, or if there is conflicting evidence

23  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive,

24  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

25  improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d

26  1335, 1338 (9th Cir. 1988).

1    In determining whether or not a claimant is disabled, the ALJ should apply the

2 five-step sequential evaluation process established under Title 20 of the Code of Federal

3 Regulations, Sections 404.1520 and 416.920. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987).

4 The five-step process has been summarized as follows:

5       Step one:  Is the claimant engaging in substantial gainful activity?
         If so, the claimant is found not disabled.  If not, proceed to step
6       two.

7       Step two:  Does the claimant have a "severe" impairment?  If so,
         proceed to step three.  If not, then a finding of not disabled is
8       appropriate.

9       Step three:  Does the claimant's impairment or combination of
         impairments meet or equal an impairment listed in 20 C.F.R., Pt.
10      404, Subpt. P, App. 1?  If so, the claimant is automatically
         determined disabled.  If not, proceed to step four.
11

12      Step four:  Is the claimant capable of performing his past work?  If
         so, the claimant is not disabled.  If not, proceed to step five.

13      Step five:  Does the claimant have the residual functional capacity
         to perform any other work?  If so, the claimant is not disabled.  If
14      not, the claimant is disabled.

15 <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

16      The claimant bears the burden of proof in the first four steps of the sequential

17 evaluation process.  <u>Yuckert</u>, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the

18 sequential evaluation process proceeds to step five.  <u>Id.</u>; <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098

19 (9th Cir. 1999).

20                                **APPLICATION**

21      Plaintiff argues that the ALJ committed the following five principal errors in

22 finding him not to be disabled:  (1) the ALJ failed to prove medical improvement and failed to

23 apply principals of res judicata; (2) the ALJ failed to adequately develop the record and secure

24 critical medical records; (3) the ALJ improperly rejected the medical opinion evidence without a

25 legitimate basis for doing so; (4) the ALJ improperly rejected plaintiff's own testimony regarding

26 his subjective complaints without a convincing reason for so doing; and (5) the ALJ improperly

1  utilized the Grids and failed to credit the testimony of the vocational expert.  The court addresses

2  plaintiff's argument below.

3  **I.      Res Judicata**

4          Plaintiff's argues that the ALJ failed to prove medical improvement and failed to

5  apply principals of res judicata.  In this regard, plaintiff notes that he was found to be disabled in

6  2003, was subsequently determined to be ineligible for benefits due to improved financial

7  circumstances, then two years later again became financially eligible for benefits, reapplied and

8  was found not have been under a disability by the ALJ.  Plaintiff argues that because he was

9  found to be disabled in 2003, and only became ineligible for benefits due to his improved

10 financial condition, the ALJ should have applied the continuing disability standard and principles

11 of res judicata which in turn would have required the ALJ to find medical improvement in order

12 to find that plaintiff was no longer disabled.  (Pl.'s MSJ (Doc. No. 18) at 18-21.[1])

13         The court notes, however, that plaintiff's benefits were suspended in February of

14 2004 (Tr. at 510), and he reapplied for benefits over one year later on June 23, 2005.  (Id. at 15.)

15 Under 20 C.F.R. § 416.1335, after a claimant's benefits have been suspended for twelve

16 continuous months those benefits are terminated.  See also Gordon v. Secretary of Health and

17 Human Services, 803 F.2d 1071, 1074 (9th Cir. 1986) ("Under 20 C.F.R. § 416.1335, eligibility

18 for benefits is terminated when twelve calendar months have elapsed after suspension for

19 ineligibility if the beneficiary has not reestablished eligibility for benefits.").  Moreover, the

20 Ninth Circuit has indicated that when a claimant reapplies for benefits more than one year after

21 the termination of benefits for a non-medical reason a presumption of continuing disability is not

22 to be applied.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1172 (9th Cir. 2008) (noting that §

23 416.1335 "supported the position that a presumption of disability should not extend to an

24 applicant whose re-application came almost three years – i.e., more than one year – after a non

25

26        [1]  Page number citations such as this one are to the page number reflected on the court's
   CM/ECF system and not to page numbers assigned by the parties.

1   medical termination"); Warren v. Bowen, 804 F.2d 1120, 1121 (9th Cir. 1986) (noting that under

2   § 416.1335 presumption of disability lasts "only for a year"); cf. Brink v. Sullivan, No. S-90-

3   0702-EJG/GGH, 1992 WL 202508, at *5 (E.D. Cal. Feb. 27, 1992) ("The court understands the

4   above regulation to mean that a person's overall eligibility will be terminated unless the recipient

5   cures the specific ineligibility problem within twelve months.  The court does not understand this

6   regulation to provide an 'automatic reinstatement.'").

7          The ALJ in 2009, therefore, was not required to apply a continuing disability

8   standard or principles of res judicata in assessing plaintiff's application for benefits and did not

9   have to find medical improvement in order to find plaintiff not disabled.  Accordingly, plaintiff is

10  not entitled to relief with respect to his claim that the ALJ failed to prove medical improvement

11  and failed to apply principals of res judicata.

12  **II.     Failure to Develop the Record**

13         Plaintiff next asserts that the ALJ failed to fully develop the record by failing to

14  produce the medical records, specifically test results from 1997 and 1998, underlying the 2003

15  decision which found that plaintiff was disabled and by failing to produce x-rays taken on

16  November 22, 2005 that were referenced by plaintiff in his 2009 letter directed to the Appeals

17  Council.  (Pl.'s MSJ (Doc. No. 18) at 21-22.)

18         With respect to the medical records underlying the 2003 disability decision in

19  plaintiff's case, as noted above, there was no presumption of continuing disability in this case.

20  Morever, under the Act, payment of SSI benefits is precluded for any months prior to the month

21  the application was filed, regardless of the alleged onset date of disability.  See 42 U.S.C. §

22  1382(c)(7); 20 C.F.R. § 416.335.  Here, plaintiff's application was filed in June of 2005.

23  Accordingly, plaintiff must establish a disability under the Act from June of 2005 through the

24  date of the Commissioner's final decision.  In finding that plaintiff was not disabled, the ALJ

25  considered a significant amount of evidence, all of which was far more recent than 1998.  In this

26  regard, there is no evidence that medical test results from 1997 and 1998 were relevant to

6

1  determining whether plaintiff was disabled as of June of 2005, particularly in light of the

2  substantial and far more recent medical evidence considered by the ALJ.

3       With respect to the 2005 x-rays referred to in plaintiff's 2009 letter to the Appeals

4  Council, it is the claimant that bears the burden of proving a disability and who must provide

5  medical evidence demonstrating the existence and severity of an alleged impairment.  Mayes v.

6  Massanari, 276 F.3d 453, 459 (9th Cir. 2001); Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.

7  1999).  An ALJ's duty to augment an existing record is triggered "only when there is ambiguous

8  evidence or when the record is inadequate to allow for proper evaluation of the evidence."

9  Mayes, 276 F.3d at 459-60.  Here, the evidence of record was not ambiguous nor was the record

10  inadequate in any way.[2]

11       Accordingly, plaintiff is not entitled to relief with respect to his claim that the ALJ

12  failed to properly develop the record.

13  **III.    Medical Opinion Evidence**

14       Plaintiff argues that the ALJ erred with respect to his treatment of medical opinion

15  evidence.  Specifically, plaintiff argues that the ALJ improperly rejected the opinion of

16  examining physician Dr. Martin, failed to reference the opinion of nonexamining physician Dr.

17  Dipsia and rejected the opinion of plaintiff's treating chiropractor.  (Pl.'s MSJ (Doc. No. 18) at

18  23-27.)

19       The weight to be given to medical opinions in Social Security disability cases

20  depends in part on whether the opinions are proffered by treating, examining, or nonexamining

21  health professionals.  Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

22  "As a general rule, more weight should be given to the opinion of a treating source than to the

23  opinion of doctors who do not treat the claimant . . . ."  Lester, 81 F.3d at 830.  This is so because

24

25       [2]  Indeed, in arguing that the ALJ erred in finding plaintiff not to be disabled, plaintiff's
counsel contends that the "evidence already in the record," was sufficiently clear and adequate.
26  (Pl.'s MSJ (Doc. No. 18) at 22.)

1  a treating doctor is employed to cure and has a greater opportunity to know and observe the

2  patient as an individual.  Smolen v. Chater, 80 F.3d at 1273, 1285 (9th Cir. 1996); Bates v.

3  Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

4         A treating physician's uncontradicted opinion may be rejected only for clear and

5  convincing reasons, while a treating physician's opinion that is controverted by another doctor

6  may be rejected only for specific and legitimate reasons supported by substantial evidence in the

7  record.  Lester, 81 F.3d at 830-31.  The ALJ, however, need not give weight to a treating

8  physician's conclusory opinion supported by minimal clinical findings.  Meanel v. Apfel, 172

9  F.3d 1111, 1113-14 (9th Cir. 1999) (affirming rejection of a treating physician's "meager

10  opinion" as conclusory, unsubstantiated by relevant medical documentation, and providing no

11  basis for finding the claimant disabled); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th

12  Cir. 1989).

13         "The opinion of an examining physician is, in turn, entitled to greater weight than

14  the opinion of a nonexamining physician."  Lester, 81 F.3d at 830.  An examining physician's

15  uncontradicted opinion, like a treating physician's, may be rejected only for clear and convincing

16  reasons, and when an examining physician's opinion is controverted by another doctor's opinion,

17  the examining physician's opinion may be rejected only for specific and legitimate reasons

18  supported by substantial evidence in the record.  Id. at 830-31.  Finally, "[t]he opinion of a

19  nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection

20  of the opinion of either an examining physician *or* a treating physician."  Id. at 831 (emphasis in

21  original).

22         Here, with respect to the opinion of examining physician Dr. J. Martin, the ALJ

23  noted the doctor's September 2005 consultative examination and summarized his findings.  (Tr.

24  at 19.)  Specifically, the ALJ acknowledged that:

25         Based on his examination and review, Dr. Martin advised that the
        claimant would have limitations for lifting no more than 5 pounds
26         frequently and no more than 10 pounds occasionally, and sit, stand

1    or walk for no more than six hours in an eight hour day.  Dr.
     Martin further indicated that the claimant's condition would likely
2    improve with weight loss and smoking cessation (see Exhibits
     C9F-C11F).
3

4    (Id.)  The ALJ, however, failed to note that Dr. Martin also indicated that while plaintiff had "the

5    ability to grasp, hold and turn objects" he "would likely benefit from restrictions from repetitive

6    hand and finger actions."  (Id. at 452.)

7            Nonetheless, the ALJ expressly discounted Dr. Martin's opinion, noting that it

8    was the only examining opinion to find that plaintiff's limitations were greater than plaintiff's

9    Residual Functional Capacity (RFC) as determined by the ALJ, and that the most recent

10   consultative examination, completed by Dr. Selcon, found that plaintiff's restrictions were less

11   than those indicated by the ALJ's RFC determination.  (Id. at 31.)  In this regard, with respect to

12   examining physician Dr. Selcon's opinion, the ALJ stated:

13           In a subsequent consultative evaluation dated September 2, 2008,
             Dr. Sanfor Selcon completed a thorough physical examination,
14           interviewed the claimant and reviewed his disability report
             allegations of disability due to due to [sic] bilateral carpal tunnel
15           syndrome, arthritis and lower and upper back pain . . . .  Dr. Selcon
             noted no significant positive signs upon examination.  Dr. Selcon
16           emphasized that the claimant had impressive grip strength in light
             of his carpal tunnel complaints of at least 80 pounds bilaterally
17           upon Jamar grip testing, normal range of motion in the upper and
             lower extremities, back and neck without any signs of tenderness,
18           negative straight leg raising, negative Tinel and Phalen signs,
             normal 5/5 motor strength, normal reflexed, normal sensation and
19           normal gait.  Dr. Selcon did note that the claimant was obese at
             305 pounds and height of 71 inches, and that he had elevated blood
20           pressure readings of 154 over 100 and repeated at 136 over 100.
             Based on his benign objective findings, Dr. Selcon diagnosed the
21           claimant with obesity, untreated hypertension, depression by
             history, degenerative joint disease of his neck and lumbar spine by
22           history and carpal tunnel syndrome by history.  Despite such
             diagnoses, Dr. Selcon advised that the claimant would have no
23           functional limitations in his ability to perform basic physical work-
             related activities (see Exhibits C169F-C173F).
24

25   (Id. at 21.)

26   /////

                                        9

1       An examining physician's opinion based on his or her own independent

2   examination of the claimant constitutes substantial evidence.  See Tonapetyan v. Halter, 242 F.3d

3   1144, 1149 (9th Cir. 2001).  Moreover, the Ninth Circuit has found that medical reports that are

4   most recent are more highly probative.  See Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir.

5   2001) (citing Stone v. Heckler, 761 F.2d 530, 532 (9th Cir. 1985)) (finding medical evaluations

6   prepared several months before the hearing in a case where the claimant had a worsening

7   condition were not substantial evidence sufficient to rebut more recent conclusions reached by a

8   treating physician).  Here, examining physician Dr. J. Martin's consultative examination took

9   place in September 2005, while the most recent consultative examination was completed by

10  examining physician Dr. Selcon in September 2008.

11      With respect to non-examining physician's medical opinion, it does appear that

12  the ALJ failed to specifically reference Dr. Dipsia's September 25, 2008 non-examining Residual

13  Functional Capacity Assessment.  Dr. Dipsia's Residual Functional Capacity Assessment,

14  however, was more restrictive than plaintiff's RFC as determined by the ALJ in only one respect.

15  In this regard, Dr. Dipsia found that plaintiff's fingering and feeling was limited.  (Tr. at 284.)

16  Dr. Dipsia's opinion, however, was contradicted by the September 2008 opinion of Dr. Selcon

17  and the June 2007 opinion of Dr. Wang, both of whom were examining physicians.[3]  As noted

18  above, the opinion of a nonexamining physician cannot by itself constitute substantial evidence

19  that justifies the rejection of the opinion of an examining physician.

20      Finally, with respect to the ALJ's treatment of the opinion of plaintiff's treating

21  chiropractor, Dr. Guenther, the ALJ noted that Dr. Guenther's opinion and considered it in

22  determining plaintiff's RFC.  (Tr. at 29.)  The ALJ, however, noted that Dr. Guenther's opinion

23  could not be afforded "controlling weight" because he was a chiropractor.  (Id.)  The ALJ's

24  treatment of Dr. Guenther's opinion was proper.  See Helmke v. Astrue, 371 Fed. Appx. 748,

25

26      [3]  Dr. Dipsia's opinion was also contradicted by the July 9, 2007, opinion of nonexamining physician Dr. Bryant Sheehy.  (Tr. at 409.)

1    749 (9th Cir. 2010) ("Further, the ALJ properly discounted the opinions of Helmke's

2    chiropractors.  Because chiropractors are not 'acceptable medical sources,' 20 C.F.R. §

3    404.1513(a), their opinions are entitled to less weight than a physician's, id. § 404.1513(d).")[4];

4    Zeidman v. Astrue, No. CV 11-9368-JPR, 2012 WL 4868118, at *8 (C.D. Cal. Oct. 15, 2012)

5    ("First, Dr. Padveen is a chiropractor and thus not an 'acceptable medical source'; the ALJ was

6    not required to give significant weight to Dr. Padveen's opinions.").

7          Accordingly, for the reasons stated above, plaintiff is not entitled to relief with

8    respect to his claim that the ALJ erred with respect to his treatment of medical opinion evidence.

9    **IV.**    **Plaintiff's Testimony**

10          Plaintiff also argues that the ALJ improperly rejected plaintiff's own testimony

11    regarding his subjective symptoms.  (Pl.'s MSJ (Doc. No. 18) at 27-30.)  In Lingenfelter v.

12    Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit summarized the ALJ's task with respect

13    to assessing a claimant's credibility:

14          To determine whether a claimant's testimony regarding subjective
           pain or symptoms is credible, an ALJ must engage in a two-step
15          analysis.  First, the ALJ must determine whether the claimant has
           presented objective medical evidence of an underlying impairment
16          which could reasonably be expected to produce the pain or other
           symptoms alleged.  The claimant, however, need not show that her
17          impairment could reasonably be expected to cause the severity of
           the symptom she has alleged; she need only show that it could
18          reasonably have caused some degree of the symptom.  Thus, the
           ALJ may not reject subjective symptom testimony . . . simply
19          because there is no showing that the impairment can reasonably
           produce the degree of symptom alleged.
20

21          Second, if the claimant meets this first test, and there is no
           evidence of malingering, the ALJ can reject the claimant's
22          testimony about the severity of her symptoms only by offering
           specific, clear and convincing reasons for doing so . . . .

23    Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted).  "At the same time,

24    the ALJ is not required to believe every allegation of disabling pain, or else disability benefits

25

26          [4]  Citation to this unpublished decision is proper pursuant to Ninth Circuit Rule 36-3(b).

1  would be available for the asking . . . ."  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

2          "The ALJ must specifically identify what testimony is credible and what

3  testimony undermines the claimant's complaints."  Valentine v. Comm'r of Soc. Sec. Admin.,

4  574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d

5  595, 599 (9th Cir. 1999)).  In weighing a claimant's credibility, an ALJ may consider, among

6  other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's]

7  testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work

8  record, and testimony from physicians and third parties concerning the nature, severity, and effect

9  of the symptoms of which [claimant] complains."  Thomas v. Barnhart, 278 F.3d 947, 958-59

10  (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792

11  (9th Cir. 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the

12  record, the court "may not engage in second-guessing."  Id.

13          Here, the record reflects no evidence of malingering on the part of plaintiff.

14  Although the ALJ did not entirely discredit plaintiff's subjective complaints, he nonetheless

15  found them to be "not entirely credible" because they were "disproportionate with the weight of

16  the objective medical record and inconsistent" with plaintiff's own prior statements to the

17  consultative examiners.  (Tr. at 18.)

18          "[A]fter a claimant produces objective medical evidence of an underlying

19  impairment, an ALJ may not reject a claimant's subjective complaints based *solely* on a lack of

20  medical evidence to fully corroborate the alleged severity of pain."  Burch v. Barnhart, 400 F.3d

21  676, 680 (9th Cir. 2005) (emphasis added).  Nonetheless, lack of medical evidence is a relevant

22  factor for the ALJ to consider in his credibility analysis.  Id. at 681.  In this regard, here the ALJ

23  found

24          it noteworthy that [plaintiff] has not shown any significant
         recurrent positive objective signs of motor loss, weakness, range of
25          motion loss, gait abnormality or even recurrent signs of tenderness
         to substantiate his subjective chronic pain complaints.

26  /////

12

(Tr. at 29.)

Moreover, in weighing a claimant's credibility the ALJ may consider a claimant's prior inconsistent statements concerning symptoms.  See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).  In this regard, the ALJ stated:

> The undersigned emphasizes that the claimant has conceded to being able to perform many normal household chores and computer use.  The undersigned also reiterates that in his pain questionnaire the claimant noted that he was able to do errands such as going to the post office or grocery store without assistance, drive his own car and do light housekeeping chores such as dusting and cooking without assistance (Exhibit C64E).

(Tr. at 29.)

As recently explained by the Ninth Circuit:

> While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

Molina, 674 F.3d at 1112-13 (citations and quotation marks omitted).

The court finds that the ALJ offered specific, clear and convincing reasons to reject plaintiff's testimony regarding the severity of his subjective symptoms.  Accordingly, plaintiff is not entitled to relief with respect to his claim that the ALJ improperly rejected plaintiff's testimony regarding his subjective symptoms.

**V.     Grids**

Finally, plaintiff argues that, based on the errors asserted above, the ALJ improperly concluded that the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("grids") directed a finding of "not disabled" and thus the ALJ's failure to reference in his decision the testimony of the vocational expert who testified at plaintiff's administrative hearing was an error.  (Pl.'s MSJ (Doc. No. 18) at 30-32.)

1    At step five, the Commissioner has the burden to demonstrate that the claimant

2    can perform some other work that exists in "significant numbers" in the national economy, taking

3    into account the claimant's RFC, age, education, and work experience.  Tackett v. Apfel, 180

4    F.3d 1094, 1100 (9th Cir. 1999).  The Commissioner may satisfy that burden either through the

5    testimony of a vocational expert or by reference to the grids.  Id. at 1100-01.

6    The grids present, in table form, a short-hand method for determining the

7    availability and numbers of suitable jobs for a claimant.  Lounsbury v. Barnhart, 468 F.3d 1111,

8    1114 (9th Cir. 2006).  They consist of a matrix of four factors–physical ability, age, education,

9    and work experience–and set forth rules that identify whether jobs requiring specific

10   combinations of those factors exist in significant numbers in the national economy.  Heckler v.

11   Campbell, 461 U.S. 458, 461-62 (1983).  If such work exists, the claimant is not disabled.  Id. at

12   462; Lounsbury, 468 F.3d at 1114.

13   When a claimant suffers only "exertional," or strength-related limitations, the ALJ

14   must consult the grids.  Lounsbury, 468 F.3d at 1115.  When a claimant suffers from both

15   exertional and nonexertional limitations (such as pain or a mental impairment), the ALJ must

16   first determine whether the grids mandate a finding of disability with respect to exertional

17   limitations.  Id. at 1116; Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989).  If so, the

18   claimant must be awarded benefits.  Cooper, 880 F.2d at 1155.  If not, the ALJ may be required

19   to take the testimony of a vocational expert.  Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir.

20   2007).  But vocational expert testimony is required only if the nonexertional limitation "is

21   'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's

22   exertional limitation."  Id.  (quoting Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

23   Thus, "an ALJ is required to seek the assistance of a vocational expert] when the non-exertional

24   limitations are at a sufficient level of severity such as to make the grids inapplicable to the

25   particular case."  Id.  See also Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 577

26   (9th Cir. 1988) ("[T]he fact that a non-exertional limitation is alleged does not automatically

1   preclude application of the grids. The ALJ should first determine if a claimant's non-exertional

2   limitations significantly limit the range of work permitted by his exertional limitations").

3          Here, the ALJ recognized that plaintiff had non-exertional limitations.  (Tr. at 32.)

4   The ALJ, however, also properly determined that plaintiff's non-exertional limitations were not

5   of a sufficient level of severity to make the grids inapplicable.  (Id. at 32-33.)  The undersigned

6   cannot conclude that the ALJ erred in finding plaintiff's nonexertional limitations not to be

7   sufficiently severe so as to significantly limit the range of work permitted by his exertional

8   limitations.  Thus, the ALJ was not required to seek the assistance of a vocational expert.  See

9   Ritchie v. Astrue, No. EDCV 12-311 JC, 2012 WL 3020012, at *4 (C.D. Cal. July 24, 2012)

10  ("Since the ALJ essentially concluded that the Grids accurately and completely accounted for all

11  of plaintiff's impairments, the ALJ properly relied on Section 203.29 to find plaintiff not

12  disabled."); Decrosta v. Astrue, No. 10-cv-2886 JSC, 2012 WL 33087, at *3 (N.D. Cal. Jan. 6,

13  2012) ("Here, too, the Court finds that the ALJ's conclusion that Plaintiff's nonexertional

14  limitations were not significant or severe enough to impact Plaintiff's range of acceptable work

15  options as represented by the grids is supported by substantial evidence.  It was therefore not

16  legal error for the ALJ to use the grids without calling a vocational expert.");  Young v. Astrue,

17  No. ED CV 10-1565-SH, 2011 WL 2669238, at *8 (C.D. Cal. July 6, 2011) ("Here, the ALJ

18  permissibly did not seek the assistance of a vocational expert because plaintiff's non-exertional

19  limitations are not sufficiently severe.").

20         Accordingly, plaintiff is not entitled to relief with respect to his claim that the ALJ

21  improperly consulted the grids and erred in failing to reference the testimony of the vocational

22  expert.

23                                    **CONCLUSION**

24         The court has found that plaintiff is not entitled to summary judgment in his favor

25  with respect to any of his arguments.

26         Accordingly, IT IS HEREBY ORDERED that:

15

1       1.  Plaintiff's motion for summary judgment (Doc. No. 18) is denied;

2       2.  Defendant's cross-motion for summary judgment (Doc. No. 23) is granted; and

3       3.  The decision of the Commissioner of Social Security is affirmed.

4   DATED: February 11, 2013.

5

6   _____

7   DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

8   DAD:6
    Ddad1/orders.soc sec/quinn2170.order